## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

ROBERT VASQUEZ,

      Plaintiff,

v.                                                                No. 1:22-cv-00522-MIS-SCY

NEW MEXICO DEPARTMENT OF
CORRECTIONS; ALISHA TAFOYA-
LUCERO, in her individual and official
capacity; CORRECTIONS OFFICERS SERVANDO
ACOSTA, ANGEL SANCHEZ, and
ANDRES SANCHEZ in their individual and official
capacity; JANINE RODRIGUEZ, in her individual
and official capacity; and WARDEN OF THE
PENITENTIARY LEON MARTINEZ, acting in
his official and individual capacity,

      Defendants.


## ORDER GRANTING DEFENDANTS' PARTIAL MOTION TO DISMISS AND MOTION FOR QUALIFIED IMMUNITY

**THIS MATTER** is before the Court on Defendants' Partial Motion to Dismiss Plaintiff's Third Amended Complaint and Motion for Qualified Immunity, filed on December 28, 2023. ECF No. 72. Plaintiff Robert Vasquez ("Plaintiff") responded on January 3, 2024. ECF No. 74. Defendants replied on January 17, 2024. ECF No. 76. Upon due consideration of the parties' submissions, the record, and the relevant law, the Court will **GRANT** Defendants' Partial Motion to Dismiss. ECF No. 72.

1

# I.    BACKGROUND[1]

Plaintiff is currently incarcerated in the New Mexico Corrections Department ("NMCD"). ECF No. 68 ¶ 6.[2] Over the course of his incarceration, Plaintiff has filed a series of complaints, discussed *infra*, against various parties also named in the case currently before the Court. Plaintiff styles his Third Amended Complaint in the instant case as making four distinct claims: (1) a violation of Plaintiff's Eighth Amendment rights with regards to the use of force by NMCD corrections officers, *id*. ¶¶ 49-50 ("Claim I"); (2) a violation of Plaintiff's Eighth Amendment rights under the NMCD grievance system, *id*. ¶ 51 ("Claim II"); (3) a violation of Plaintiff's right to be free from disability discrimination under the Rehabilitation Act, 29 U.S.C. § 794, *id*. ¶¶ 52-61 ("Claim III"); and (4) a violation of Plaintiff's First Amendment rights, *id.* ¶¶ 62-64 ("Claim IV").

Claim I arises under the following set of allegations: On August 4, 2020, while incarcerated at the Penitentiary of New Mexico,[3] Plaintiff used the inmate phone to inform an unnamed official of the Eighth Judicial District Court of New Mexico that he was being denied access to a scheduled telephonic court hearing. *Id*. ¶ 12. Shortly thereafter, Defendant NMCD Corrections Officer ("CO") Servando Acosta engaged in a verbal altercation with Plaintiff. *Id*.

---

[1] The Court accepts the truth of all well-pleaded factual allegations in Plaintiff's Third Amended Complaint and draws all reasonable inferences in Plaintiff's favor for the purposes of this Motion.

[2] Plaintiff's Third Amended Complaint ("Complaint") contains an initial set of paragraphs enumerated 1-47. *See* ECF No. 68. It then begins the numbering process again, with what should be ¶ 48 styled as ¶ 1. *See id.* at 22. In the second set of enumerated paragraphs, the Complaint omits paragraphs 43- 47. As a result, where this Order references one of the paragraphs in the first set of enumerated paragraphs, it does so with conventional enumeration: *e.g.*, ¶ 1, ¶ 23, ¶ 47. Where this Order references one of the first 42 paragraphs in the second set of enumerated paragraphs, it does so as follows: ¶ 1.2, ¶23.2, ¶ 42.2, etc. Where this Order references paragraphs beyond paragraph 42.2 in the second set of enumerated paragraphs, it again reverts to conventional enumeration: ¶ 48, ¶ 50, etc.

[3] Although Plaintiff's Third Amended Complaint does not expressly identify the Penitentiary of New Mexico (PNM) as the site where Plaintiff was incarcerated, it obliquely references "the PNM facility where Plaintiff was an inmate and where he was attacked[.]" ECF No. 68 ¶ 22.

¶ 13. Defendant Acosta then went to extract Plaintiff from his cell, after telling Plaintiff he would "---- him up." *Id*. ¶¶ 14-15 (alteration in original).

When Plaintiff's cell was opened, and while Plaintiff was standing still, Acosta "reached out and grabbed . . . Plaintiff and swept him off his feet and slammed him on the floor, and then got on top of . . . Plaintiff and started to punch . . . Plaintiff with closed fists[,]" until Plaintiff eventually ended up prone with his arms extended. *Id.* ¶ 15. At that point, Defendant CO Angel Sanchez entered the cell and sprayed Plaintiff with mace. *Id*. ¶ 16. While Plaintiff was prone, Angel Sanchez continued to mace Plaintiff. *Id*. ¶ 18. After Plaintiff was secured and being led out of his cell by Angel Sanchez, Acosta attempted to assault Plaintiff again, and "several other officers had to intervene to protect Plaintiff." *Id*. ¶ 19.

Following that incident, Defendant CO Andres Sanchez (Defendant Angel Sanchez's brother), a witness to the scene, filed a report in which he omitted any mention of Angel Sanchez's use of mace, and stated that he "saw [Plaintiff] attacking CO Servando Acosta[.]" *Id*. ¶ 17. Acosta also submitted a report following the incident to the same effect. *Id.* ¶ 20. Plaintiff alleges that cameras of the incident "clearly show that CO Acosta was not being truthful[.]" *Id*.

After describing the events of August 4, 2020, Plaintiff's Third Amended Complaint takes a turn. Rather than focusing on the actions of Acosta and the Sanchez brothers, Plaintiff identifies his "worst injury" as that inflicted upon him by the NMCD grievance process. *Id*. ¶ 22. Here, the Complaint's other named Defendants enter the picture: the NMCD itself; Janine Rodriguez, the NMCD grievance department chair; Alisha Tafoya Lucero, the NMCD Secretary of Corrections; and Leon Martinez, the Warden of the Penitentiary of New Mexico ("PNM"), where Plaintiff was incarcerated. The alleged actions of those Defendants give rise to Plaintiff's Claims II and III.

In support of Claims II and III, Plaintiff makes a series of accusations—often difficult to decipher—primarily centered around the latter set of Defendants' roles in the inmate grievance process. In essence, Plaintiff accuses those Defendants of variously (1) failing to provide legal monitors to assist inmates who, like Plaintiff, qualify as disabled,[4] *id.* ¶¶ 22, 24, 41-42, 23.2-25.2; (2) improperly manipulating the grievance process, *id.* ¶¶ 9, 24; (3) discriminating against Plaintiff based on his disability, *id.* ¶¶ 24, 29, 43, 47, 41.2, 57; (4) maintaining a grievance process which is unconstitutional and violates both the Americans with Disabilities Act and Rehabilitation Act, *id. passim*; (5) failing to take adequate action to remove, supervise, or discipline abusive corrections officers, *id.* ¶¶ 32-33; (6) disregarding risks to inmate health and safety, ¶¶ 34, 37, 39-40, 43, 50, 51; and (7) deliberate indifference with regards to both the abuse endured by prisoners as well as their failure to modify the inmate grievance process, *id.* ¶¶ 33, 37, 39, 41, 50-51. In Claim IV, Plaintiff also makes a cursory allegation that his First Amendment right to communicate with a judge was violated by the Defendant corrections officers who assaulted him. *Id.* ¶¶ 62-64.

As mentioned, this case is the latest in a string of cases filed by Plaintiff against those Defendants named in the instant complaint as well as affiliated parties. The first of those cases levels allegations against Defendants Rodriguez and Tafoya Lucero (in addition to other parties not named here) of constitutional violations primarily arising from an alleged denial of access to medical care following an incident in which Plaintiff was stabbed. *See Vasquez v. Tafoya-Lucero et al.*, Case No. 1:20-cv-00612-RB-DLM, Doc. 13 ("*Vasquez* I"). While Plaintiff initially appeared in that case *pro se*, he was eventually represented by counsel—the same counsel as in

---

[4] Plaintiff alleges that he qualifies as a "disabled" individual under both the Rehabilitation Act, 29 U.S.C. § 794, and the Americans with Disabilities Act, 42 U.S.C. § 12132. ECF No. 68 ¶ 6.

this instant case. *See Vasquez* I, Docs. 36; 59. When represented by counsel, Plaintiff moved to amend his complaint in *Vasquez I* to add claims that the NMCD's grievance process was both unconstitutional and violative of the Rehabilitation Act. *See Vasquez* I, Doc. 42 at 16, 31. Many of Plaintiff's proposed amendments exactly mirror those claims raised in the instant Third Amended Complaint. *See*, *e.g.*, *id.* at 17 (raising claims regarding the unavailability of legal monitors with the exact same language as employed in Defendant's instant Complaint, ECF No. 68 ¶¶ 23-25.2).

Judge Brack adopted the Proposed Findings and Recommended Disposition in that case by Magistrate Judge Kevin Sweazea and denied Plaintiff's Motion to Amend. *See Vasquez* I, Doc. 68. In doing so, Judge Brack found that (1) Plaintiff "fail[ed] to show an Eighth Amendment violation" with regards to his claims about the grievance process, *Vasquez* I, Doc. 68 at 8, and (2) allowing Plaintiff to amend his complaint to add a claim under the Rehabilitation Act would be futile, *id.* at 5, 13. Ultimately, Defendants Tafoya-Lucero and Rodriguez were dismissed from that case. *Id*. Doc. 120. Proceedings in that matter against the remaining defendants are ongoing.

The second of those cases, filed *pro se*, accused Defendants Rodriguez and Tafoya Lucero of the same conduct as in *Vasquez* I. Examination of the handwritten complaint in *Vasquez* II shows it to be the exact same document as was filed in *Vasquez* I. *See Vasquez v. New Mexico Corrections Department et al.,* Case No. 1:21-cv-01064-RB-CG, Doc. 1-1 (*Vasquez* II). Given the duplicative nature of that filing and the ongoing proceedings in *Vasquez* I, Judge Brack dismissed *Vasquez* II without prejudice. *Id*. Doc. 4.

Plaintiff's third case, in which he was again represented by the same counsel as in *Vasquez* I, levels claims against Defendants NMCD and Rodriguez. *See Vasquez v. New Mexico*

5

*Corrections Department, et al.*, Case No. 1:22-cv-00462-DHU-KK (*Vasquez* III). Several of the claims alleged against Defendant Rodriguez in *Vasquez* III are echoed in the instant Complaint—to include (1) that Defendant Rodriguez engaged in improper manipulation of the grievance process; (2) that the NMCD fails to provide legal monitors to inmates as required by statute, and; (3) allegations challenging the grievance procedure writ large. *See id.*, Doc. 1-2. Many of the idiosyncratic typos found in Case No. 3's filing are replicated exactly in Plaintiff's instant Complaint. *Compare id.* ¶ 3.2[5] ("The 5-day deadline effectively constitute [sic] a 5-day statute of limitation on inmate excessive use of force lawsuits") *with* ECF No. 68 ¶ 3.2 (the same quotation, error included). Proceedings in that case are ongoing.

Plaintiff's fourth case, in which Plaintiff was again represented by the same counsel as in *Vasquez* I, *Vasquez* III, and the instant case, levels claims against both Sanchez Defendants, Defendant Tafoya-Lucero, and the NMCD. *See Vasquez v. Tafoya-Lucero*, Case No. 1:22-cv-00593-JB-DLM, Doc. 11 (although filed after the instant case, for clarity the Court will refer to this case as "*Vasquez* IV"). Plaintiff's last operative complaint in *Vasquez* IV—like Plaintiff's attempted amended complaint in *Vasquez* I and his operative complaint in *Vasquez* III—replicates much of the language found in Plaintiff's Third Amended Complaint. Indeed, where it concerns the grievance process, the text of Plaintiff's instant complaint is almost identical to that of his amended complaint in *Vasquez* IV, except for Defendant's substituting NMCD grievance officer Daniel Sedillo where the instant complaint names Janine Rodriguez. *Compare, e.g.*, ECF No. 68 ¶¶ 1.2-42.2, 48 *with Vasquez* IV, Doc. 11 ¶¶ 1.2-48[6] (in which verbatim language is used in both complaints, except for Plaintiff's use of the name "Daniel Sedillo" in the two instances

---

[5] Plaintiff's Amended Complaint in *Vasquez* III suffers from the same enumerative deficiencies as the current Complaint, and the Court employs the same reference system as described *supra* note 2.

[6] In what should now be a familiar pattern, the paragraphs in Plaintiff's Amended Complaint in *Vasquez* IV are misnumbered, and the Court again employs the same reference system as described *supra* note 2.

where "Janine Rodriguez" appears in the instant case). Judge James O. Browning of the District of New Mexico dismissed Plaintiff's claims with prejudice, finding, *inter alia*, that Plaintiff had failed to plead an Eighth Amendment violation, a claim under the Americans with Disabilities Act, or a Rehabilitation Act violation with regards to the NMCD grievance process. *See Vasquez IV*, Doc. 45 at 16-19.

Plaintiff's claims regarding the grievance process—which have now been adjudicated by two separate Judges of the District of New Mexico and are pending before a third, not to include the undersigned—again make up much of his Third Amended Complaint in the instant case. Here, Plaintiff couples those claims with allegations regarding his assault at the hands of NMCD corrections officers and a First Amendment claim. Plaintiff requests various forms of relief, to include a declaratory judgment regarding NMCD's grievance process and the imposition of several injunctions on various Defendants. *See* ECF No. 68 ¶ 65(A)-(I). Defendants' Partial Motion to Dismiss invokes qualified immunity, as well as the doctrines of issue and claim preclusion, in moving to dismiss various parties and claims. *See generally* ECF No. 72.

## II.    STANDARD OF REVIEW

To survive a Rule 12(b)(6) motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007). A claim is facially plausible when the pleaded facts "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted). While reviewing courts "must take all of the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation." *Id*.

The Court's review is also limited by the scope of the pleadings before it: "[t]he nature of a Rule 12(b)(6) motion tests the sufficiency of the allegations within the four corners of the complaint." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994). "[T]he mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complainant must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims." *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).

The Court notes that Defendants assert a qualified immunity defense. The assertion of a qualified immunity defense at the motion to dismiss stage "subjects the defendant to a more challenging standard of review than would apply on summary judgment." *Truman v. Orem City*, 1 F.4th 1227, 1235 (10th Cir. 2021) (quoting *Peterson v. Jensen*, 371 F.3d 1199, 1201 (10th Cir. 2004)). "Specifically, the court analyzes 'the defendant's conduct as alleged in the complaint.'" *Id*. (quoting *Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014)).

### III.   DISCUSSION

Defendants move to dismiss Claim I as it applies to Angel Sanchez, Alisha Tafoya Lucero, and Leon Martinez on the grounds of qualified immunity. ECF No. 72 at 10-18. Defendants move to dismiss Claims II and III on the grounds of issue and claim preclusion, and request that Plaintiff's counsel be required to satisfy the costs of Defendants (again) litigating against the allegations leveled in Claim II. *Id*. at 18-24. Defendants move to dismiss Claim IV on the grounds of failure to state a claim. *Id*. at 24-27. The Court finds that Defendants are entitled to both dismissal and the imposition of costs on Plaintiff's counsel, where requested.

### A. Claim I fails to overcome qualified immunity as to Defendants Andres Sanchez, Alisha Tafoya Lucero, and Leon Martinez

Claim I alleges that "the defendant employee-correction officers, the Secretary of Corrections Alysia [sic] Tafoya- Lucero, Warden Leon Martinez and their subordinates were deliberately indifferent to a substantial risk of serious harm to the inmates because of the beatings in violation of the Eighth Amendment." ECF No. 68 ¶ 50. In moving to dismiss, Defendants invoke qualified immunity as it applies to Defendants Andres Sanchez, Tafoya Lucero, and Martinez. ECF No. 72 at 10-18. They do not invoke qualified immunity or move to dismiss Claim I as it applies to Defendants Acosta or Angel Sanchez.

**1. The doctrine of qualified immunity**

"Qualified immunity protects governmental officials from liability for civil damages insofar as their conduct does not violate 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Perry v. Durborow*, 892 F.3d 1116, 1120 (10th Cir. 2018) (quoting *Weise v. Casper*, 593 F.3d 1163, 1166 (10th Cir. 2010)).

"A § 1983 defendant's assertion of qualified immunity is an 'affirmative defense [that] creates a presumption that the defendant is immune from suit.'" *Truman*, 1 F.4th at 1235 (quoting *Est. of Smart by Smart v. City of Wichita*, 951 F.3d 1161, 1168 (10th Cir. 2020)). To overcome that presumption, plaintiffs must satisfy a two-prong test, demonstrating that: "(1) the defendant's actions violated a constitutional or statutory right, and (2) that right was clearly established at the time of the defendant's complained-of conduct." *Id.* (quoting *Thomas*, 765 F.3d at 1194). "If the plaintiff fails to satisfy *either part* of this two-part inquiry, the court must grant the defendant qualified immunity." *Hesse v. Town of Jackson, Wyo.*, 541 F.3d 1240, 1244 (10th Cir. 2008) (emphasis added).

As to the first prong of the analysis, the Tenth Circuit has "stressed the need for careful attention to particulars, especially in lawsuits involving multiple defendants. 'It is particularly

important' that plaintiffs 'make clear exactly who is alleged to have done what to whom, . . . as distinguished from collective allegations.'" *Pahls v. Thomas*, 718 F.3d 1210, 1225 (10th Cir. 2013) (quoting *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1215 (10th Cir. 2011)).

As to the second prong of the analysis, "[a] right is clearly established 'when a Supreme Court or Tenth Circuit[7] decision is on point, or if the clearly established weight of authority from other courts shows that the right must be as the plaintiff maintains.'" *Truman*, 1 F.4th at 1235 (quoting *Thomas*, 765 F.3d at 1194). A precedent is "considered on point if it involves 'materially similar conduct' or applies 'with obvious clarity' to the conduct at issue." *Lowe v. Raemisch*, 864 F.3d 1205, 1208 (10th Cir. 2017) (quoting *Est. of Reat v. Rodriguez*, 824 F.3d 960, 964-65 (10th Cir. 2016).

Put another way, "[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful under the circumstances presented." *Herrera v. City of Albuquerque*, 589 F.3d 1064, 1070 (10th Cir. 2009). The test for clarity requires that "[e]xisting precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011).

Complete factual symmetry is not an absolute prerequisite for determining whether a violation is clearly established: "a prior case need not be exactly parallel to the conduct [at issue] for the officials to have been on notice of clearly established law." *Truman*, 1 F.4th at 1235.

---

[7] The Court notes its concern that this element of the qualified immunity analysis affords greater civil rights protections to individuals in more populous circuits, like those which encompass the West and East Coasts. Compared to the other Federal Circuits, the Tenth Circuit has one of the smallest populations and one of the lowest civil caseloads. *See Federal Judicial Caseload Statistics 2022 Tables*, U.S. Courts (Mar. 31, 2022), https://www.uscourts.gov/federal-judicial-caseload-statistics-2022-tables. Because there are fewer published opinions regarding Section 1983 in more rural circuits—such as the Tenth Circuit—individuals residing within those circuits have fewer clearly established civil rights than those in more populated circuits.

(quoting *Reavis v. Frost*, 967 F.3d 978, 992 (10th Cir. 2020)). "There can also be 'the rare obvious case, where the unlawfulness of the officer's conduct is sufficiently clear even though existing precedent does not address similar circumstances.'" *Id*. at 1236 (quoting *Dist. of Columbia v. Wesby*, 583 U.S. 48, 64 (2018)). The Supreme Court has emphasized, however, that "courts must not define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced." *Wesby*, 583 U.S. at 63-64 (internal citation omitted).

Finally, plaintiffs seeking to overcome qualified immunity must allege that defendants acted with the state of mind required to establish culpability for each alleged constitutional violation. *See Brown v. Montoya*, 662 F.3d 1152, 1170 (10th Cir. 2011). In addition to knowledge and intent, allegations of deliberate indifference are sufficient in the context of Eighth Amendment violations. *See Burke v. Regalado*, 935 F.3d 960, 991 (10th Cir. 2019). "The Supreme Court has explained that 'deliberate indifference entails something more than mere negligence.'" *Paugh v. Uintah Cnty*., 47 F.4th 1139, 1154 (10th Cir. 2022) (quoting *Farmer v. Brennan*, 511 U.S. 825, 835 (1994)). Rather, "it is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id*. (quoting *Farmer*, 511 U.S. at 835). "Thus, the Court has equated deliberate indifference to 'recklessness,' in which 'a person disregards a risk of harm of which he is aware.'" *Id*. (citations omitted).

### 2. Qualified immunity as applied to Defendants Andres Sanchez, Tafoya Lucero, and Martinez

Defendants raise qualified immunity on behalf of Andres Sanchez. ECF No. 72 at 10. Countering, Plaintiff incorporates by reference his previous response to a substantively similar

motion to dismiss. *See* ECF No. 74 at 7 (invoking ECF No. 50 at 3-10). That response argues that Andres Sanchez (1) knew that the assault he witnessed was a constitutional violation; (2) had a duty to intervene; and (3) neglected to do so. ECF No. 50 at 4. In support of his argument, however, Plaintiff merely recites the facts as alleged against Andres Sanchez and cites no case law that suffices to demonstrate liability in the present instance. This is insufficient for Plaintiff to overcome his burden.

Specifically, Plaintiff alleges that Defendant Andres Sanchez "saw his brother CO Angel mace into Plaintiff's face and never reported the excessive use of force as required by department policy[,]" and that "CO Andres Sanchez lied in that he stated 'I CO Andres Sanchez saw an inmate attacking CO Servando Acosta.'" ECF No. 68 ¶ 17. Plaintiff makes no allegations that Andres Sanchez himself employed excessive force. Instead, as noted, his theory of liability is premised on the idea that Andres Sanchez' failure to intervene is sufficient to establish liability under Section 1983.

The facts, as alleged, do not demonstrate that Andres Sanchez knew he was witnessing a constitutional violation. Rather, Plaintiff's sole factual, nonconclusory allegation as to what Defendant Andres Sanchez witnessed was that "CO Andres Sanchez . . . saw his brother CO Angel Sanchez spray mace into Plaintiff's face[.]" ECF No. 68 ¶ 17. This threadbare allegation cannot be held to demonstrate any knowledge on the part of Andres Sanchez that a constitutional violation had taken place.

Plaintiff also cites no cases in support of his claim that Andres Sanchez had any affirmative duty to intervene in the circumstances of the instant case. Where Plaintiff does cite to cases, they primarily reference abstract principles not directly applicable to the present case. *See, e.g.*, ECF No. 50 at 5 (invoking *Jones v. Norton*, 809 F.3d 564, 576 (10th Cir. 2015) (wherein the

Tenth Circuit merely reaffirmed that for failure-to-intervene claims to advance, defendants must have knowledge of an underlying constitutional violation)). Nothing cited by Plaintiff supports the claim that a corrections officer's failure to intervene when witnessing a prisoner maced by another corrections officer is itself a constitutional violation, let alone one of which Andres Sanchez should have been on notice.

Plaintiff's inadequate pleading as to Andres Sanchez is fatal. He has failed to satisfy *either* prong of the qualified immunity analysis—namely, to demonstrate that "(1) the defendant's actions violated a constitutional or statutory right,"[8] or "(2) that right was clearly established at the time of the defendant's complained-of conduct." *Truman*, 1 F.4th at 1235 (citation omitted).

Defendants also invoke qualified immunity on behalf of Defendants Tafoya Lucero and Martinez. Plaintiff does not allege that either Tafoya Lucero or Martinez participated in the violence against Plaintiff, but rather that they were responsible under a theory of supervisory liability. *See* ECF No. 74 at 10-11. Plaintiff must thus overcome the doctrine of qualified immunity in the context of supervisory liability.

It is well-established that Section 1983 does not provide for strict supervisory liability. *See Jenkins v. Wood*, 81 F.3d 988, 994 (10th Cir. 1996). Rather, successfully alleging supervisory liability in the Section 1983 context requires that Plaintiffs identify "three elements:

---

[8] Both the Supreme Court and the Tenth Circuit have advised courts to avoid addressing the first question—whether a given action should be characterized as a constitutional violation—in instances where the right alleged is not clearly established and claims thus fail on the second prong of the analysis. *See Kerns v. Bader*, 663 F.3d 1173, 1180-81 (10th Cir. 2011) ("[T]he doctrine of 'constitutional avoidance' suggests the wisdom of passing on the first constitutional question [when] 'it is plain that a constitutional right is not clearly established but far from obvious whether in fact there is such a right.'") (citing *Pearson v. Callahan*, 555 U.S. 223, 237 (2009)). Cognizant of this, the Court does not find that Andres Sanchez's actions as alleged were *not* a constitutional violation, simply that he failed to plead facts demonstrating as much.

(1) personal involvement; (2) causation, and (3) state of mind." *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 767 (10th Cir. 2013).

To establish personal involvement in the supervisory context, "[t]he plaintiff . . . must show an 'affirmative link' between the supervisor and the constitutional violation." *Id.* at 767. Plaintiff fails to do so, alleging no facts which connect any of Tafoya Lucero or Martinez's individual actions to the violence allegedly committed against Plaintiff. Rather, Plaintiff focuses extensively on the alleged *generalized* failure of Defendants Tafoya Lucero and Martinez to discipline corrections officers accused of violence, absent any specific details. *See* ECF No. 74 at 7-8. But the repetition of these vague allegations does not suffice to demonstrate personal involvement by either Defendant in the alleged constitutional violation committed against Plaintiff. While this alone would be sufficient to find for Defendants, the Court notes that Plaintiff also fails to meet his burden with regards to elements two and three of the analysis.

As to element two, causation, "[a] plaintiff must establish the requisite causal connection by showing the defendant set in motion a series of events that the defendant knew or reasonably should have known would cause others to deprive the plaintiff of her constitutional rights." *Schneider*, 717 F.3d at 768 (cleaned up) (citation omitted). Here, Plaintiff's briefing is similarly deficient. No facts alleged by Plaintiff demonstrate how the actions of Tafoya Lucero and Martinez led to the violence allegedly suffered by Plaintiff at the hands of various corrections officers.

As to element three, allegations of deliberate indifference suffice to establish the requisite state of mind for an Eighth Amendment violation claim brought under Section 1983. *See Burke*, 935 F.3d at 991. Officials may be found deliberately indifferent when they "deliberately or consciously fail[] to act when presented with an obvious risk of constitutional harm which will

almost inevitably result in constitutional injury of the type experienced by the plaintiff." *Hollingsworth v. Hill*, 110 F.3d 733, 745 (10th Cir. 1997). Plaintiff makes no plausible allegations which would allow the Court to conclude as much here. While Plaintiff repeatedly asserts that Defendants Tafoya Lucero and Martinez were knowledgeable as to the general risk of corrections officers committing violence against inmates, *see, e.g*., ECF No. 68 ¶ 50; ECF No. 74 at 7-9, he has alleged no facts which would lend credence to those allegations, which are otherwise wholly conclusory.

In sum, Plaintiff has failed to successfully allege any of the three elements with regards to Defendants Tafoya Lucero or Martinez.

As Plaintiff has failed to meet his burden under the doctrine of qualified immunity, Claim I must be dismissed with prejudice against Defendants Andres Sanchez, Tafoya Lucero, and Martinez. *See Doe v. Woodard*, 912 F.3d 1278, 1288, 1302 (10th Cir. 2019) (affirming dismissal of Fourth and Fourteenth Amendment claims with prejudice in the absence of any case law clearly establishing the rights asserted by the plaintiffs).

### B. Claims II and III are precluded

Plaintiff's Claims II and III consist of allegations that the NMCD grievance system violates, respectively, the Eighth Amendment and the Rehabilitation Act. *See* ECF No. 68 ¶¶ 51-61. Defendants move to dismiss Claim II on the grounds that it fails to state a claim under Federal Rule of Civil Procedure 12(b)(6); that Defendants are subject to qualified immunity; and on the grounds of issue preclusion, or alternatively, claim preclusion.[9] *See* ECF No. 72 at 19-21.

---

[9] This Court uses the phrase "collateral estoppel," which is "frequently referred to as 'issue preclusion[,]'" interchangeably with the phrase "issue preclusion." *Stan Lee Media, Inc. v. Walt Disney Co*., 774 F.3d 1292, 1297 (10th Cir. 2014). This Court also employs the term "claim preclusion" in lieu of "res judicata," while acknowledging that "legal authorities . . . also use the latter term." *Johnson v. Spencer*, 950 F.3d 680, 693 n.3 (10th Cir. 2020).

Defendants move to dismiss Claim III pursuant to Federal Rule of Civil Procedure 12(b)(6) and on the grounds of issue preclusion or, alternatively, claim preclusion. *See id*. at 23-24.

Plaintiff counters by invoking his previously filed reply to a substantively similar motion. *See* ECF No. 74 at 14-16 (incorporating by reference ECF No. 50 at 10-18). His arguments are unavailing: Claims II and III are precluded. What's more, Plaintiff's repeated insistence on bringing the same claims—and wasting both the Court and Defendants' time in, respectively, repeatedly adjudicating said claims and repeatedly defending against them—necessitates that this Court impose appropriate sanctions, in requiring Plaintiff to pay the costs to Defendants of defending against those claims.

Because the Court elects to dismiss Plaintiff's Claims II and III on the grounds of their being collaterally estopped, the Court does not reach the merits of Defendants' arguments regarding qualified immunity or failure to state a claim.

### 1. The doctrine of issue preclusion/ collateral estoppel

As Defendants note, Plaintiff's affinity for the copy and paste function raises the question of whether Plaintiff's grievance claims arise from the same causes of action or distinct causes of action. *See* ECF No. 72 at 21. In case of the former, they are barred by claim preclusion. *See Park Lake Res. LLC v. U.S. Dep't of Agr.*, 378 F.3d 1132, 1136 (10th Cir. 2004) ("Claim preclusion bars a party from relitigating a claim or cause of action on which final judgment has been rendered.").[10] In case of the latter, they are barred by issue preclusion. *See id*. ("[I]ssue preclusion bars a party from relitigating an issue once it has suffered an adverse determination *on*

---

[10] The proceedings in *Vasquez I* before Judge Brack are ongoing, and thus possibly raise issues of claim-splitting—a doctrine which applies when identical claims in another case are yet pending. *See Harbinger Cap. Partners LLC v. Ergen*, 103 F.Supp.3d 1251, 1259 (D. Colo. 2015). As the Court determines that issue preclusion is the appropriate doctrine to apply here, the Court does not undertake a claim-splitting analysis.

*the issue*, even if the issue arises when the party is pursuing or defending against a different claim.") (emphasis added).

Given that Plaintiff's claims regarding the NMCD grievance process across his several cases in the District of New Mexico are all appended to distinct underlying allegations of misconduct by NMCD personnel, this Court understands them as appropriately analyzed through the lens of issue preclusion, rather than claim preclusion.

Issue preclusion "bars the successive litigation of any issue of law or fact 'once [it has] been determined by a valid and final judgment.'" *Stan Lee Media, Inc. v. Walt Disney Co*., 774 F.3d 1292, 1297 (10th Cir. 2014) (quoting *Ashe v. Swenson*, 397 U.S. 436, 443, (1970)).  The doctrine exists "to promote judicial efficiency, encourage reliance on previously adjudicated matters, and avoid inconsistent rules of decision." *Id*. In determining whether an issue is precluded, the Court applies a four-part test, looking to whether:

> (1) the issue previously decided is identical with the one presented in the action in question,
> (2) the prior action has been finally adjudicated on the merits,
> (3) the party against whom the doctrine is invoked was a party or in privity with a party to the prior adjudication, and
> (4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action.

*Id*.

Relevant here, the Court emphasizes that "dismissal for failure to plead a viable cause of action is a decision on the merits" under the second prong of the analysis. *Id.* at 1298.

### 2.  Issue preclusion as applied to Plaintiff's Claims II and III

As discussed *supra* Section I of this Order, two Judges in the District of New Mexico have now issued rulings on the exact issues raised by Plaintiff in his Third Amended Complaint. A final judgment has yet to be issued in *Vasquez* I. In *Vasquez* IV, however, Judge Browning

dismissed Plaintiff's claims with prejudice. *See Vasquez* IV, Doc. 45. Further, that dismissal took place on September 29, 2023, *see Vasquez* IV, Doc. 45—some three months before the Plaintiff's raising the same issues in his Third Amended Complaint, *see* ECF No. 68 (filed on December 15, 2023). Such dismissal makes the application of issue preclusion appropriate here. *See Stan Lee Media*, *Inc.*, 774 F.3d at 1289 ("[D]ismissal for failure to plead a viable cause of action is a decision on the merits" which satisfies the second prong of the issue preclusion analysis).

> As to both Claims II and III, Judge Browning's disposition is clear:

> [Plaintiff's] Eighth Amendment claims fail, because inadequate grievance procedures do not amount to a constitutional violation. Similarly, [Plaintiff] does not state a claim under the Rehabilitation Act, because he has not alleged facts demonstrating that he suffered discrimination as a result of his mental health issues. The Court concludes, therefore, that dismissal of [Plaintiff's] Second Claim for Relief is appropriate.

*Vasquez* IV, Doc. 45 at 16.

In his instant Response to Defendants' Motion to Dismiss, ECF No. 72, Plaintiff invokes only a previously filed Response, ECF No. 50, in challenging Defendants' raising collateral estoppel. Yet in his previously-filed Response, Plaintiff makes no mention of Judge Browning's order dismissing his case in *Vasquez* IV—nor could he have, given that that order was issued two weeks *after* Plaintiff's previously-filed Response. *Compare* ECF No. 50 (filed on September 13, 2023) with *Vasquez* IV, Doc. 45 (filed on September 29, 2023).   Plaintiff has thus raised no applicable counterpoints to Defendants' charge that Judge Browning's order triggers the doctrine of issue preclusion. *See* ECF No. 72 at 19-21.

Given Judge Browning's dismissal of Plaintiff's identical claims in *Vasquez* IV, all four elements of issue preclusion thus apply to Claims II and III: (1) the issues previously decided by

Judge Browning—whether NMCD's grievance process violates the Eighth Amendment, and whether Plaintiff has stated a claim under the Rehabilitation Act—are identical with those presented in the action in question; (2) the prior action has been finally adjudicated on the merits; (3) the party against whom the doctrine is invoked—Plaintiff—was a party in the prior adjudication, and (4) the party against whom the doctrine is raised—Plaintiff—had a full and fair opportunity to litigate both issues in the prior action.

After first attempting to bring Claims II and III in *Vasquez* I, Plaintiff lost. He then lost again—this time, incurring a final judgment on the merits of both claims—when the issue was presented in *Vasquez* IV. The Court will not endorse his attempts to relitigate the issue here.

### 3.  The imposition of costs on Plaintiff's counsel is warranted

Finally, Defendants also argue that "Plaintiff's Counsel should be personally required to satisfy the excess costs, expenses, and attorney fees for Defendants to defend against [Claim II]." ECF No. 72 at 20.

It is well established that "the inherent powers of the district court extend to awarding as a sanction attorneys' fees to the opposing party 'when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *Sally Beauty Co. v. Beautyco, Inc*., 372 F.3d 1186, 1189 (10th Cir. 2004) (citing *Chambers v. NASCO, Inc*., 501 U.S. 32, 45 (1991) (citation omitted)). Counsel for Plaintiff has now attempted to file the same claims in *four* separate instances in the District of New Mexico, at times transparently copying claims from one suit to another. The undersigned Judge is now the third judge within this District to rule on Plaintiff's substantively identical claims, with claims still pending before Judge David H. Urias in *Vasquez* III. Plaintiff's repeated insistence on bringing dismissed claims has necessitated an extraordinary expenditure of both the Court—and Defendants'—limited time and resources.

The Court finds this a paradigmatic example of the kind of vexatious litigation that justifies the shifting of costs, and as such elects to award Defendants those costs incurred in defending against both Claims II *and* III in the present case, to be paid by counsel for Plaintiff.

### C.   Claim IV

Plaintiff's First Amendment claim reads, in its entirety, as follows:

> Plaintiff had the First Amendment Right of Freedom of Speech when talking to a Judge from the Eighth Judicial District, and the right was clearly established at the time of Defendant Correction Officers misconduct and violence against Plaintiff . . . The Defendant Corrections Officers violated the Plaintiff's First Amendment Constitutionally protected activity.

ECF No. 68 ¶¶ 63-64.

Defendants move to dismiss Claim IV on the grounds that the facts as alleged by Defendant do not demonstrate a constitutional violation. ECF No. 72 at 25. Plaintiff counters by way of incorporating his previous response to a substantively similar motion. *See* ECF No. 72 at 16 (incorporating by reference ECF No. 50 at 18-22). Defendants are correct.

In order to state a claim for First Amendment retaliation, a plaintiff must plead facts which could plausibly show: "(1) that the plaintiff was engaged in constitutionally protected activity; (2) that the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct." *Requena v. Roberts*, 893 F.3d 1195, 1211 (10th Cir. 2018) (citation omitted).

Here, in Plaintiff's own telling, Defendant Acosta's alleged use of excessive force came about following a verbal altercation with Plaintiff, after Plaintiff did not respond to

Defendant Acosta calling his name. ECF No. 68 ¶ 12; *see id.* ¶ 13 ("Acosta was upset at Plaintiff for not immediately responding to him when he first called for Plaintiff and started abusing Plaintiff by calling him a 'bitch and punk' and started using other forms of profanity directed at Plaintiff").

Plaintiff argues that "Plaintiff has plausibly alleged that the use of force by the Defendants' [sic] was substantially motivated by being on the phone in his cell with a Judge *and not immediately responding to CO Acosta when he was called*." ECF No. 50 at 20 (emphasis added). But as Plaintiff's own pleadings make clear, the identity of the party on the other line was inconsequential: it was Plaintiff's lack of response to Defendant Acosta that triggered the escalation of hostility. Indeed, Plaintiff never even alleges that he informed Defendant Acosta that he was on the line with a judge, merely that he was "off the phone" and that he then "tried to explain . . . why he didn't immediately jump when Acosta called him[.]" *Id.* ¶ 13.

None of the facts alleged by Plaintiff demonstrate that the incident between Defendant corrections officers and Plaintiff was the result of—let alone was "substantially motivated as a response to"—Plaintiff's engaging in conduct protected by the First Amendment. *Requena*, 893 F.3d at 1211.

Thus, Plaintiff's First Amendment claim fails and Claim IV must be dismissed with prejudice. *See id.* at 1218 (upholding the dismissal with prejudice of a futile First Amendment claim made pursuant to Section 1983).

## A. CONCLUSION

For the foregoing reasons, Defendants' Partial Motion to Dismiss Plaintiff's Third Amended Complaint, ECF No. 64, is **GRANTED**.

It is **HEREBY ORDERED**:

1. Claim I is **DISMISSED** as to Defendants Andres Sanchez; Alisha Tafoya Lucero; and Leon Martinez;

2. Claims II-IV are **DISMISSED** in their entirety;

3. Counsel for Plaintiff is **ORDERED** to pay the costs to Defendants of defending against Claims II and III; and

4. The remaining Defendants, Angel Sanchez and Servando Acosta, shall have **FOURTEEN DAYS** from the date of this Order in which to file an Answer to the Third Amended Complaint.

**MARGARET STRICKLAND**
UNITED STATES DISTRICT JUDGE