IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

ROBERT VASQUEZ,

    Plaintiff,

v.                                                        Case No. 22-cv-00522-MIS-SCY

NEW MEXICO DEPARTMENT OF
CORRECTIONS, et al.,

    Defendants.

## ORDER DENYING PLAINTIFF'S MOTION TO COMPEL

Now before the Court is Plaintiff's motion to compel, filed on July 11, 2025. Doc. 206. Plaintiff seeks discovery related to a 2022 incident at Guadalupe County Correctional Facility, which is the subject of a separate lawsuit. Nonetheless, in the present lawsuit, which arises from events that allegedly occurred in 2020 at the Penitentiary of New Mexico, Plaintiff seeks discovery related to the 2022 incident. Such discovery is appropriate, Plaintiff argues, because the 2022 incident involved one of the Defendants in the present case, Angel Sanchez, and his actions in 2022 provide evidence of his consciousness of guilt as to the 2020 incident. Further, Plaintiff argues, evidence of the 2022 incident will diminish the credibility of defense witnesses. The Court finds, however, that any hypothetical relevance of the information Plaintiff seeks is minimal and not proportional to the needs of the current case when considering factors that militate against permitting such discovery. Therefore, the Court denies Plaintiff's motion.

## LEGAL STANDARD

Federal Rule of Civil Procedure 26(b)(1) permits parties to

> obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the

parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

"Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. Discovery relevance is "to be construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on any party's claim or defense." *Kennicott v. Sandia Corp.*, 327 F.R.D. 454, 469 (D.N.M. 2018) (internal quotation marks omitted). And while "relevancy in discovery is broader than that required for admissibility at trial, the object of inquiry must have some evidentiary value" to be discoverable. *Dorato v. Smith*, 163 F. Supp. 3d 837, 865-66 (D.N.M. 2015) (internal quotation marks omitted).

## BACKGROUND

In its August 7, 2025 Order Denying Amended Motion To Set Aside Order Granting Defendants' Partial Motion To Dismiss And Motion For Qualified Immunity, the Court set forth the factual and procedural background that is equally applicable to the present motion. Doc. 222 at 1-11. The background is as follows:

> On December 15, 2023, Plaintiff filed the operative Third Amended Complaint which arises from an incident that occurred while he was an inmate at the Penitentiary of New Mexico ("PNM") on August 4, 2020. See ECF No. 68 at 4-5, 33-35, ¶¶ 9, 11-12, 50. Plaintiff alleges that on that date, corrections officer Servando Acosta attacked Plaintiff in his cell pod. See id. at 5-8, ¶¶ 12-15. During the beating, corrections officer Angel Sanchez came into the cell pod and sprayed mace into Plaintiff's face. Id. at 8-9, ¶¶ 16-17. Corrections officer Andres Sanchez—Angel's brother—saw Angel spray mace into Plaintiff's face but did not report it. Id. at 9, ¶ 17. Count I of the Complaint alleges that Defendants violated Plaintiff's Eighth Amendment right against the excessive use of force. Id. at 33-35, ¶¶ 49-50.
>
> On December 28, 2023, Defendants filed a Partial Motion to Dismiss Plaintiff's Third Amended Complaint and Motion for Qualified Immunity ("Partial Motion to Dismiss"). ECF No. 72. Relevant here, Andres Sanchez argued that Count I

failed to state a claim against him and that he was entitled to qualified immunity. Id. at 10-13. On March 26, 2024, the Court issued an Order granting Defendants' Partial Motion to Dismiss, finding, inter alia, that Andres Sanchez is entitled to qualified immunity as to Count I ("Partial Dismissal Order"). ECF No. 79 at 8-15. Specifically, the Court found:

> . . . Plaintiff alleges that Defendant Andres Sanchez "saw his brother CO Angel [spray] mace into Plaintiff's face and never reported the excessive use of force as required by department policy[,]" and that "CO Andres Sanchez lied in that he stated 'I CO Andres Sanchez saw an inmate attacking CO Servando Acosta.'" ECF No. 68 ¶ 17. Plaintiff makes no allegations that Andres Sanchez himself employed excessive force. Instead, as noted, his theory of liability is premised on the idea that Andres Sanchez' failure to intervene is sufficient to establish liability under Section 1983.
>
> The facts, as alleged, do not demonstrate that Andres Sanchez knew he was witnessing a constitutional violation. Rather, Plaintiff's sole factual, nonconclusory allegation as to what Defendant Andres Sanchez witnessed was that "CO Andres Sanchez . . . saw his brother CO Angel Sanchez spray mace into Plaintiff's face[.]" ECF No. 68 ¶ 17. This threadbare allegation cannot be held to demonstrate any knowledge on the part of Andres Sanchez that a constitutional violation had taken place.
>
> Plaintiff also cites no cases in support of his claim that Andres Sanchez had any affirmative duty to intervene in the circumstances of the instant case. Where Plaintiff does cite to cases, they primarily reference abstract principles not directly applicable to the present case. See, e.g., ECF No. 50 at 5 (invoking Jones v. Norton, 809 F.3d 564, 576 (10th Cir. 2015) (wherein the Tenth Circuit merely reaffirmed that for failure-to-intervene claims to advance, defendants must have knowledge of an underlying constitutional violation)). Nothing cited by Plaintiff supports the claim that a corrections officer's failure to intervene when witnessing a prisoner maced by another corrections officer is itself a constitutional violation, let alone one of which Andres Sanchez should have been on notice.
>
> Plaintiff's inadequate pleading as to Andres Sanchez is fatal. He has failed to satisfy either prong of the qualified immunity analysis—namely, to demonstrate that "(1) the defendant's actions violated a constitutional or statutory right," or "(2) that right was clearly established at the time of the defendant's complained-of conduct."

Id. at 12-13 [footnote deleted] (quoting Truman v. Orem City, 1 F.4th 1227, 1235 (10th Cir. 2021)).

Meanwhile, in a separate lawsuit in this District, Plaintiff has sued the Sanchez brothers (among others) for civil rights violations arising out of an incident that

occurred in June 2022 at the Guadalupe County Correctional Facility ("GCCF"). See Am. Compl., Vasquez v. Tafoya- Lucero, et al. [hereinafter Vasquez II], Case No. 1:22-cv-00593-JB-DLM (D.N.M. Sept. 12, 2022), ECF No. 11. The Amended Complaint in that case alleges, in relevant part:

> 12. The Plaintiff on about the month of June 2022 requested from the Warden of PNM, then Davis S. Fajardo to be transferred from a level four to a level three facility because (1) correction officers at PNM had informed inmates that he was a "rat", because Plaintiff had filed grievances against some correction officers including Correction Officers Perez, Angel Sanchez and Andres Sanchez and others and Plaintiff started getting threats from other inmates and (2) Because Plaintiff qualified for a lower level of incarceration.
>
> . . .
>
> 14. On or about June 24, 2022 Plaintiff was transferred to GCCF and when he arrived he was met by brother STIU Sgt Angel Sanchez, Andres Sanchez and an other [sic] individual.
>
> . . .
>
> 19. Upon opinion and belief in retaliation for Plaintiff filing a law suit [sic] against the Sanchez brothers, and upon seeing Plaintiff at GCCF or prior to Plaintiff's arrival at GCCF the Sanchez brothers informed other prisoners in housing Unit 1-E Pod at GCCF in Santa Rosa that Plaintiff was a "rat"; and within an hour after the Sanchez brothers had placed Plaintiff in E-Pod at GCCF Plaintiff was jumped by several inmates in the E-Pod and was stabbed and had to be transported for emergency medical care to a hospital.
>
> 20. The Sanchez brothers purposely put Plaintiff in a Unit where Plaintiff's life was threatened in retaliation for the law suit [sic] that Plaintiff had filed against them.

Id. at 4-5, 7 ¶¶ 12, 14, 19-20. Plaintiff asserts that the defendants' actions constitute deliberate indifference to a serious risk of harm, in violation of the Eighth and Fourteenth Amendments. Id. at 35-36, ¶¶ 56-57. Defendants moved to dismiss this claim under Rule 12(b)(6). Vasquez II, ECF No. 16 (Oct. 10, 2022). On September 29, 2023, United States District Judge James O. Browning issued an Order granting the defendants' motion to dismiss, Vasquez II, ECF No. 45 (Sep. 29, 2023), and later issued a Memorandum Opinion fully detailing his rationale, Vasquez II, ECF No. 81 (Aug. 29, 2024). As relevant here, Judge Browning's Memorandum Opinion found that "Vasquez pleads insufficient facts that Angel Sanchez and Andres Sanchez[] encouraged other inmates to assault him in retaliation for the lawsuit and grievances he filed against them and that Angel Sanchez and Andres Sanchez[] purposefully failed to come to Vasquez' aid

4

after the assault." Id. at 32. Consequently, Judge Browning concluded that Plaintiff failed to state an Eighth Amendment claim against the Sanchez brothers upon which relief can be granted. See id. at 32-42.

On August 19, 2024, Plaintiff filed an amended motion to set aside Judge Browning's dismissal order based on "newly discovered evidence." Vasquez II, ECF No. 75 ¶ 22 (Aug. 29, 2024). Specifically, Plaintiff argued that newly-obtained declarations from fellow inmates Max Aragon and Matthew Benavides suggest that Andres Sanchez manipulated Aragon, Benavides, and others to stab Plaintiff on June 24, 2022 at GCCF. Id. ¶¶ 5-14. At a hearing, Judge Browning denied the amended motion to set aside without prejudice after Plaintiff stipulated to proceed instead by filing an amended complaint with the new information. See Vasquez II, ECF No. 104 at 1 (Jan. 27, 2025); see also Vasquez II, ECF No. 106 at 1 (Apr. 27, 2025).

On April 27, 2025, in the case before Judge Browning, Plaintiff filed a Second Motion to Amend Complaint to which he attached a proposed Second Amended Civil Rights Complaint against, inter alia, Angel and Andres Sanchez. Vasquez II, ECF No. 106 (Apr. 27, 2025). Defendants filed a Response to that Motion stating that they "do not oppose Plaintiff's request to amend his complaint to add an Eighth Amendment claim against Andres Sanchez in his individual capacity for the alleged deliberate indifference to a substantial risk of serious harm to Plaintiff . . . ." Vasquez II, ECF No. 108 at 2 (May 30, 2025). Plaintiff filed a Reply on June 27, 2025. Vasquez II, ECF No. 110 (June 27, 2025). That Motion remains pending before Judge Browning.

Returning to the case at bar, on May 28, 2025, Plaintiff filed the instant Amended Motion to Set Aside Order Granting Defendants' Partial Motion to Dismiss and Motion for Qualified Immunity. ECF No. 180. The Motion invokes Rules 60(b)(2) and (6). Id. at 7. As to Rule 60(b)(2), the Motion is premised on the same "newly discovered evidence" that prompted the amended motion to set aside Judge Browning's dismissal order—i.e., declarations from fellow inmates Max Aragon and Matthew Benavides that suggest that Andres Sanchez manipulated Aragon, Benavides, and others to stab Plaintiff on June 24, 2022 at GCCF. Id. at 3-15. The declarations say nothing about the August 4, 2020 incident at PNM giving rise to this case. See id. at 23-26. Nevertheless, Plaintiff argues—unpersuasively—that the declarations "directly link Andres and Angel Sanchez to Plaintiff's failure to protect claim in violation of the 8th Amendment, stemming from the actions of Andres and Angel Sanchez in the present action[.]" Id. at 12. Plaintiff argues—unpersuasively—that the declarations are relevant to the Eighth Amendment claim asserted against Andres Sanchez because, for example, it shows the state of mind required to establish culpability, is evidence of a motive to injure or kill Plaintiff, and shows intent, design, knowledge, or lack of innocent purpose. Id. at 14.

Doc. 222 at 1-7 (footnotes omitted). After analyzing these facts and considering the parties' arguments, the Court denied Plaintiff's request to amend the complaint as untimely and futile. *Id.* at 8-10. As set forth below, for many of the same reasons, the Court now denies Plaintiff's motion to compel.

## ANALYSIS

The bulk of Plaintiff's motion to compel seeks discovery related to the 2022 stabbing of Plaintiff. The Court begins by considering these discovery requests and then considers Plaintiff's remaining discovery disputes, unrelated to the 2022 stabbing.

### I. Discovery Related To The 2022 Stabbing

Plaintiff argues:

> the discovery requested which would detail if Angel Sanchez and Andres Sanchez used other inmates to attempt to kill or seriously injure plaintiff because they were upset or wanted to quiet plaintiff regarding the merits of this case is probative to rebut any contention that plaintiff is lying about the facts in the present cause of action i.e., that Angels Sanchez is not guilty of the use of excessive use of force against plaintiff in this case, and that both Angel Sanchez and Andres Sanchez showed a consciousness of guilt in the present cause of action and further to attack their credibility and their bias at trial is relevant and probative to rebut any contentions that the Sanchezs' might raise as noted in their defense thus far.

Doc. 206 at 11-12 [sic, generally].

The Court understands Plaintiff to be making two arguments. First, that discovery related to the 2022 incident could provide direct evidence as to Angel Sanchez's consciousness of guilt. Second, that discovery related to the 2022 incident may provide information that could be used to impeach Angel and Andres Sanchez. The Court concludes that the burden and expense of the proposed discovery outweighs the minimal potential value of the discovery Plaintiff seeks.

#### A. Consciousness of guilt

Plaintiff cites numerous cases where courts have held that a criminal defendant's act of fleeing provides evidence of consciousness of guilt. Doc. 206 at 9. By analogy, Plaintiff argues

6

that evidence that Angel and Andres Sanchez conspired to have Plaintiff murdered in 2022 provides evidence of their consciousness of guilt as to their assault of Plaintiff in 2020. That is, Plaintiff appears to argue that there is overlap between the alleged 2020 assault and the alleged 2022 murder conspiracy. He posits that the Sanchez brothers' motive for the 2022 murder conspiracy was to avoid responsibility for Angel Sanchez's 2020 assault on Plaintiff. Consequently, he reasons, evidence that the Sanchez brothers conspired to murder Plaintiff in 2022 provides evidence of Angel Sanchez's[1] consciousness of guilt as to the 2020 assault.[2]

Even assuming that evidence of a 2022 murder conspiracy might provide some evidence of Angel Sanchez's consciousness of guilt in 2020, however, the success of Plaintiff's argument is premised on the notion that the Court will allow Plaintiff to present the murder conspiracy case he has filed in 22-cv-00593-JB-DLM as part of the present case. But, as the Court has indicated, the present case is distinct from the 22-593 case and the Court is not inclined to allow Plaintiff to present the 22-593 case as part of the present case.

More specifically, on August 7, 2025, the Court considered Plaintiff's argument that, based on newly discovered evidence, the Court should set aside its dismissal of Andres Sanchez from the present lawsuit. Doc. 222 at 6. As the Court noted, "the Motion is premised on the same

---

[1] Andres Sanchez's state of mind in 2020 is not at issue because the Court has dismissed Plaintiff's claims against him in the current litigation. Doc. 79 at 13 ("Plaintiff's inadequate pleading as to Andres Sanchez is fatal. He has failed to satisfy *either* prong of the qualified immunity analysis— namely, to demonstrate that (1) the defendant's actions violated a constitutional or statutory right, or (2) that right was clearly established at the time of the defendant's complained of conduct." (internal quotation marks omitted)).

[2] This is different than an argument that the Sanchez brothers retaliated against Plaintiff for filing the present lawsuit by labeling him "as a snitch" and then putting him in a pod where they knew he would be assaulted. The present case does not include a retaliation claim. Therefore, there is no need for Plaintiff to prove retaliation and a desire to demonstrate retaliation cannot justify Plaintiff's discovery request.

'newly discovered evidence' that prompted the amended motion to set aside Judge Browning's dismissal order—i.e., declarations from fellow inmates Max Aragon and Matthew Benavides that suggest that Andres Sanchez manipulated Aragon, Benavides, and others to stab Plaintiff on June 24, 2022 at GCCF." *Id*. The Court then characterized as unpersuasive Plaintiff's arguments that "the declarations 'directly link Andres and Angel Sanchez to Plaintiff's failure to protect claim in violation of the 8th Amendment, stemming from the actions of Andres and Angel Sanchez in the present action'" and that "the declarations are relevant to the Eighth Amendment claim asserted against Andres Sanchez because, for example, it shows the state of mind required to establish culpability, is evidence of a motive to injure or kill Plaintiff, and shows intent, design, knowledge, or lack of innocent purpose." *Id*. (quoting Doc. 180 at 12 and citing Doc. 180 at 14). Further, the Court wrote, "In this Court's view, the declarations are relevant, if at all, only to the case before Judge Browning, Case No. 1:22-cv-00593-JB-DLM." *Id.* at 10 n.11. In the Court's present proportionality analysis and in its consideration of the strength of any link between Plaintiff's present assault allegations and Plaintiff's 2022 conspiracy-to-murder allegations, the Court must consider its prior findings. As set forth above, the Court has already found Plaintiff's arguments to be unpersuasive and the link between Plaintiff's 2020 allegations and his 2022 allegations to be weak.

   Further, Plaintiff's attempt to obtain discovery of the alleged 2022 murder conspiracy in the present case is misplaced. To the extent Plaintiff seeks to obtain discovery related to the 2022 allegations that are the subject of the 22-593 case before Judge Browning, Judge Browning is in the best position to determine what, if any discovery related to those allegations is appropriate. In contrast to the 22-593 case in which Plaintiff's 2022 murder conspiracy allegations are front and center, those allegations are collateral to the present case. Because Plaintiff placed his murder

8

conspiracy allegations directly in front of Judge Browning when he filed a separate lawsuit, Judge Browning is in the best position to assess the merits of Plaintiff's murder conspiracy allegations and to manage discovery related to those allegations.

Regarding the merits, Judge Browning concluded that Plaintiff "pleads insufficient facts that Angel Sanchez and Andres Sanchez[] encouraged other inmates to assault him in retaliation for the lawsuit and grievances he filed against them and that Angel Sanchez and Andres Sanchez[] purposefully failed to come to Vasquez' aid after the assault." Doc. 222 at 5 (quoting Civ. No. 22-593, Doc. 81 at 32). Although Plaintiff has since filed a Second Motion To Amend/Correct Complaint that is pending in the 22-593 case, Judge Browning's most recent assessment is that Plaintiff's allegations in the 22-593 case, and about which Plaintiff seeks discovery in the present case, are insufficient to state a claim.

Moreover, Angel and Andres Sanchez asserted qualified immunity in the 22-593 case. Doc. 16. A defendant who asserts qualified immunity is entitled to stay discovery pending resolution of the motion in which qualified immunity was asserted. *Workman v. Jordan*, 958 F.2d 332, 336 (10th Cir. 1992). This is because

> The basic thrust of the qualified-immunity doctrine is to free officials from the concerns of litigation, including "avoidance of disruptive discovery" . . . . There are serious and legitimate reasons for this. If a government official is to devote time to his or her duties, and to the formulation of sound and responsible policies, it is counterproductive to require the substantial diversion that is attendant to participating in litigation and making informed decisions as to how it should proceed. Litigation, though necessary to ensure that officials comply with the law, exacts heavy costs in terms of efficiency and expenditure of valuable time and resources that might otherwise be directed to the proper execution of the work of the government.

*Ashcroft v. Iqbal*, 556 U.S. 662, 685 (2009).

Supreme Court precedent protecting public officials from the burdens of discovery until their assertion of qualified immunity is resolved would be meaningless if a plaintiff could obtain

the same discovery by re-asserting as a collateral matter the same allegations in a separate lawsuit. Because Judge Browning found that Plaintiff failed to state a claim in the case before him, no discovery is taking place and, unless Judge Browning grants Plaintiff's pending motion to amend his complaint, no discovery will take place in that case. Given that Judge Browning is not permitting discovery about the 2022 incident in a case where that incident is front and center, it would be anomalous to allow such discovery in the present case, where allegations related to the 2022 incident are a collateral matter at best.

As Plaintiff points out, sometimes it is appropriate for discovery to proceed on the same subject in separately filed cases. But here, discovery is not proceeding in the 22-593 case—once Defendants in that case raised qualified immunity, discovery stopped. Permitting discovery in the present case, where the 2022 incident is only a collateral matter, would expose Defendants to the burdens of litigation and deny them the protection qualified immunity is designed to provide. The Court declines to endorse such an end-run.

This, however, does not mean that Plaintiff's consciousness-of-guilt argument is wholly specious. The Court agrees that, hypothetically, evidence that a defendant conspired to get rid of an accuser to prevent the accuser from proving an assault would lend support to a consciousness-of-guilt determination.[3] But to present such consciousness-of-guilt evidence, Plaintiff seeks to obtain discovery sufficient to prove a murder conspiracy so that he can then present collateral evidence of a murder conspiracy at trial in this case to help prove that, two years earlier, he was wrongfully sprayed with mace. Of course, Defendant Sanchez denies that he was involved in a conspiracy to murder Plaintiff in 2022. So, in fairness, he would also be entitled to obtain

---

[3] Plaintiff filed his lawsuit in the present case on April 8, 2022. Doc. 223 at 3; Doc. 206 at 96. Plaintiff was stabbed on June 24, 2022. Doc. 206 at 19.

discovery related to Plaintiff's murder conspiracy allegations and, at a trial dedicated to determining whether he wrongfully sprayed Plaintiff with mace in 2020, Defendant Sanchez would be entitled to defend himself against allegations that he conspired to murder Plaintiff in 2022. Carried to its logical extension, Plaintiff's argument is that he should be allowed to obtain discovery related to his 2022 murder conspiracy allegations so that the Court can essentially try the murder conspiracy case filed before Judge Browning as part of the present unlawful-mace-spraying case. Plaintiff's argument fails to recognize that presentation of evidence of a 2022 murder conspiracy would engulf the present case and threaten to mislead and confuse a jury vested primarily with the responsibility of deciding what happened in 2020, not 2022. This, as the Court's August 7, 2025 ruling indicates, the Court is not inclined to do. Doc. 222 at 10 n.11 ("In this Court's view, the declarations are relevant, if at all, only to the case before Judge Browning.").

    B.    Bias

In addition to Plaintiff's consciousness-of-guilt argument, the Court understands Plaintiff to be arguing that evidence of the alleged 2022 conspiracy would demonstrate bias on the part the Sanchez brothers (both of whom are expected to testify at a trial in the present matter). Evidence that a witness conspired to murder a plaintiff would tend to show bias against that plaintiff. *See United States v. Abel*, 469 U.S. 45, 52 (1984) (Under both the Federal Rules of Evidence and the common law before their adoption, the term bias "describe[s] the relationship between a party and a witness which might lead the witness to slant, unconsciously or otherwise, his testimony in favor of or against a party. Bias may be induced by a witness' like, dislike, or fear of a party, or by the witness' self-interest. Proof of bias is almost always relevant because the jury, as finder of fact and weigher of credibility, has historically been entitled to assess all evidence which might bear on the accuracy and truth of a witness' testimony."). As such, subject

to Federal Rule of Evidence 403 considerations, the presiding judge might consider allowing Plaintiff's counsel to ask the Sanchez brothers on cross-examination whether, after Plaintiff filed the present lawsuit in April 2022, they conspired to have Plaintiff murdered.[4] As set forth above, however, given the Court's previous rulings, it is unlikely that the Court would allow Plaintiff to attempt to prove a 2022 murder conspiracy as part of the present case. This is particularly true where the only justification for such a detour is to supplement the notion that a party-opponent's testimony (and the testimony of a former-party-opponent) is biased toward their side.

The burden and expense associated with obtaining discovery sufficient to demonstrate a collateral conspiracy to murder is extremely high. This burden and expense weighs much more heavily on the proportionality balance than the possible value of obtaining supplemental extrinsic evidence of defense witnesses' bias against Plaintiff. The Court thus concludes that the burden and expense associated with obtaining discovery related to an alleged murder conspiracy that occurred more than two years after the events giving rise to the present lawsuit is disproportionate to the potential evidentiary value such discovery may provide. Fed. R. Civ. P. 26(b)(1).

## II.     Other Discovery Disputes

Plaintiff does not move to compel specific discovery requests with an explanation of each request and why it is relevant. Instead, Plaintiff attaches 77 pages of his full requests for production, interrogatories, and requests for admission to both Defendants, Doc. 206 at 16-93, with the apparent expectation that the Court will sort through Plaintiff's discovery requests and Defendants' objections to determine which are at issue. The Court declines to do so.

---

[4] Whether such cross-examination should be permitted is matter for the presiding judge's discretion and beyond the scope of the present analysis.

Nevertheless, in addition to the ruling on the 2022 murder-conspiracy allegations, the Court will briefly address the personnel file of Andres Sanchez given that Defendants discuss it in their response. Doc. 223 at 8.

Defendants state that:

> Counsel has reviewed the personnel file. Included therein are documents relating to two instances in which Andres Sanchez was disciplined, neither of which involved charges pertaining to excessive force or his honesty and credibility. Defendants are willing to submit these documents to the Court for an *in camera* review for relevance to this matter.

Doc. 223 at 8.

The Court declines the invitation to conduct an in camera review. If the personnel file does not contain relevant material, Defendants are not required to produce it.

## CONCLUSION

Plaintiff's Motion to Compel, Doc. 206, is DENIED.

_____
UNITED STATES MAGISTRATE JUDGE

13