**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

ROBERT VASQUEZ,

Plaintiff,

v. No. 1:22-cv-00522-MIS-SCY

NEW MEXICO DEPARTMENT OF CORRECTIONS; CORRECTIONS OFFICERS SERVANDO ACOSTA and ANGEL SANCHEZ in their individual and official capacity,

Defendants.[1]

## ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**THIS MATTER** is before the Court on Defendants' Motion for Summary Judgment ("Motion"), filed on March 20, 2026. ECF No. 269. Plaintiff Robert Vasquez ("Plaintiff" or "Mr. Vasquez") responded on August 8, 2026 ("Response").[2] ECF No. 299. Defendants replied on September 3, 2026 ("Reply").[3] ECF No. 303. Upon due consideration of the Parties' submissions, the record, and the relevant law, the Court will **GRANT** Defendants' Motion.

---

[1] Additional, previous parties to this case that Court dismissed in its Order Granting Defendants' Partial Motion to Dismiss, ECF No. 79, included: Alisha Tafoya-Lucero, in her individual and official capacity; Corrections Officer Andres Sanchez, in his individual and official capacity; Janine Rodriguez, in her individual and official capacity; and Warden of the Penitentiary Leon Martinez, in his official and individual capacity.

[2] Plaintiff's opposed Motion to Accept Response as Filed, ECF No. 300, is **GRANTED**.

[3] Plaintiff has moved to strike the Reply because, he argues, it "seeks judgment on new evidence Plaintiff could not address in his Response[,]" a new witness declaration. ECF No. 308 at 2. However, because the Court is granting summary judgment on grounds wholly unrelated to the new declaration attached to the Reply, the Court **DENIES** the Motion to Strike as moot.

# I. BACKGROUND

## A. Introduction

Plaintiff is currently incarcerated at a facility of the New Mexico Corrections Department ("NMCD"). ECF No. 68 ¶ 6. Over the course of his incarceration, Plaintiff has filed at least one additional case against similar parties to those named in the case currently before the Court. *See, e.g.*, *Vasquez v. Tafoya-Lucero et al.*, 1:22-cv-00593-KG-DLM. On March 26, 2024, the Court granted Defendants' Partial Motion to Dismiss. ECF No. 79. In doing so, the Court dismissed claims II, III, and IV of the operative Complaint. *Id.* at 15–18; 20–21.[4] The Court also granted qualified immunity to Andres Sanchez, Alisha Tafoya-Lucero, and Leon Martinez. *Id.* at 11–15. Therefore, the only remaining claim left in the operative Complaint is Claim I for Violation of Plaintiff's Eighth Amendment Rights As to Use of Force, ECF No. 68 at 33–35, and the only remaining defendants are Servando Acosta ("Defendant Acosta") and Angel Sanchez ("Defendant Sanchez") (together, "Defendants"), *see* ECF No. 79 at 8, 15, 21. [5]

The Court recounts the factual basis for the Motion "in the light depicted by the videotape[s]" previously lodged as evidence. *Scott v. Harris*, 550 U.S. 372, 380 (2007); ECF No. 224. Where there are gaps, or "skips," in the videos, the Court has viewed the facts "in the light

---

4 The remaining Claim I in no way relates to Janine Rodriguez, who was indirectly involved only in dismissed Claims II and III, both related to the grievance procedure. ECF No. 68 at 35–38. With all claims against her dismissed, Ms. Rodriguez is no longer a defendant in this case.

5 Although NMCD was not formally dismissed as a party to the case in the Court's Order Granting Defendants' Partial Motion to Dismiss, Claim I of the operative Complaint does not allege any actions or wrongdoing by NMCD. ECF No. 68 at 3 ("The New Mexico Corrections Department is named as a Defendant because it is a public entity and solely because it's the entity that has discriminated against the Plaintiff by excluding him from participation in or has denied him the benefit of using the grievance procedures maintained by the NMCD or who has otherwise discriminated against Plaintiff because of his disabilities as it pertains to the grievance process."), 34. Compare this with dismissed Claim III which directly references NMCD. *Id.* at 36–39. Claim I only references Secretary of Corrections Alisha Tafoya-Lucero and Warden Leon Martinez, "their subordinates[,]" and "employee-correction officers[.]"As Secretary Alisha Tafoya-Lucero, Janine Rodriguez (former grievance officer), and Warden Leon Martinez, potential agents of NMCD, were dismissed from this case, *see* ECF No. 79, the Court notes that no apparent claims remain against Defendant NMCD except for any agency relationship with Defendants Acosta and Sanchez which is not clearly alleged. ECF No. 68 at 36–39.

most favorable to the nonmoving party [where] there is a 'genuine' dispute as to those facts." *Id.* The Court recounts the facts only briefly as the Court's basis for granting summary judgment rests on a clear concession from Plaintiff as to the Government's claims of qualified immunity.

**B. Undisputed Material Facts**

The Court has subject matter and personal jurisdiction over this matter. Mot. at 1; Resp. at 2. At the time of the allegations described in the Complaint, Plaintiff Robert Vasquez was incarcerated by the New Mexico Corrections Department ("NMCD"), specifically in the North Penitentiary of New Mexico ("PNM North") in Santa Fe, New Mexico. *Id.* At PNM North, Mr. Vasquez was housed in Housing Unit 3A in S-Pod, cell 106. *Id.* At the relevant time, NMCD employed Defendants Acosta and Sanchez, who both worked at PNM North. Mot. at 2; Resp. at 1. NMCD also employed Andres Sanchez, who was involved with the allegations in the Complaint, at PNM North. *Id.*

On August 4, 2020, Mr. Vasquez had a telephonic court hearing; however, he was not escorted to attend his hearing. Mot. at 2; Resp. at 2–3. Instead, Mr. Vasquez utilized a portable hand-held phone, which belonged to the S-Pod, to attend the hearing through a three-way call. Mot. at 2–3; Resp. at 3.

The facts that follow, and their timestamps, are taken from two videos of the incident: the "Cell Door" Video, Bates 840, and the "Stairs" Video, Bates 841. The facts are as both videos show, unless both videos "skip" over a relevant time period.[6,7] At approximately 2:21 PM on

---

[6] The Parties dispute the events that occurred during the "skips" in the video. *Compare* Mot. at 9 *with* Resp. at Ex. F-15 at 65–69, M-1 at 109. The Court has determined that the videos skip over six major periods which cumulatively leave just over one minute of the relevant events outside the scope of both videos: 2:24:42 PM to 2:24:52 PM, 2:25:14 to 2:25:17 PM, 2:25:22 PM to 2:25:26 PM, 2:25:30 PM to 2:25:46 PM, 2:25:49 PM to 2:25:51 PM, and 2:25:30 PM to 2:25:46 PM. However, because the Court's basis for granting summary judgment is Plaintiff's failure to provide the Court with legal authority related to Defendants' claims of qualified immunity, any disputed facts that occurred during these skips are not material.

August 4, 2020, water spread along the floor outside of Mr. Vasquez's cell. At approximately 2:21:50 PM that day, Defendant Acosta entered the frame of the video, approaching Mr. Vasquez's cell, wearing a face mask, and holding a piece of paper in his left hand. Defendant Acosta held nothing in his right hand. Defendant Acosta then knocked on Mr. Vasquez's cell at 2:21:58 PM. Defendant Acosta appears to stand and talk through the window of Mr. Vasquez's cell for around two minutes; it is not clear from the video whether or how Mr. Vasquez responded. Mr. Vasquez does briefly appear in the frame of the video through the window during this two-minute period. Defendant Acosta then backed away from the window and Mr. Vasquez's cell, and Mr. Vasquez's cell door opened at approximately 2:24:25 PM. The entire physical altercation that followed occurred from 2:24:36 to 2:26:37.

At 2:24:36 PM, Mr. Vasquez left his cell through the open door. As he left his cell, he grabbed onto his pants, making fists with his hands. Once he took almost two full steps out of his cell, less than one second from when he started exiting the cell, Defendant Acosta grabbed him with gloved hands, swept Mr. Vasquez off his feet using his leg, and brought Mr. Vasquez to the floor, landing on top of Mr. Vasquez by 2:24:38 PM. Mr. Vasquez then rolled over Defendant Acosta and wrestled Defendant Acosta to the ground, positioning himself on top of Defendant Acosta at 2:24:39 PM with his knees around Defendant Acosta's head. By 2:24:42 PM, the video shows Defendant Acosta flipping Mr. Vasquez onto his back. However, at this point all video coverage cuts out for ten seconds.

---

[7] The Court previously considered and denied Plaintiff's request for spoliation sanctions related to the skips in the videos, finding that the skips were not due to bad faith on the part of the Government. *See* ECF Nos. 305, 306. In addition, Plaintiff has filed a Motion for Reconsideration, ECF No. 309, of the Court's Order denying Plaintiff's request. However, because the Court is granting summary judgment on grounds wholly unrelated, and without reference, to the videos, the Court **DENIES** this Motion as moot.

When the video coverage restarts at 2:24:52 PM, Defendant Acosta appears on top of Mr. Vasquez, who kicked his feet in the air. Defendant Acosta then struck Mr. Vasquez three times and rolled him over to his stomach by 2:25:01 PM. At 2:25:05 PM, Mr. Vasquez attempted to stand; as he stood, Defendant Acosta put his weight on Mr. Vasquez from behind to push him back down to the floor. Defendant Acosta then dragged Mr. Vasquez, who was still actively moving, along the floor and continued wrestling with Mr. Vasquez with his arms locked around Mr. Vasquez's waist. At 2:25:13 PM, Defendant Acosta appeared to begin to strike Mr. Vasquez again, but then all video coverage cuts out for approximately four seconds.

When the video restarts at 2:25:18 PM, Defendant Acosta appears on top of Mr. Vasquez, and Defendant Sanchez was walking down the stairs. Both Defendants then put their weight on Mr. Vasquez as he continued moving beneath them. At 2:25:29 PM, Defendant Acosta reached for the OC pepper spray in his holster while Defendant Sanchez attempted to stop Mr. Vasquez from moving again. The video then cuts out.

By 2:25:47 PM, when the video restarts, Andres Sanchez was also walking down the steps. Mr. Vasquez, who had stopped moving, was on the floor restrained by Defendant Sanchez. Defendant Sanchez then secured Mr. Vasquez's hands behind his back. *Id.* Defendant Sanchez and Andres Sanchez then lifted Mr. Vasquez to a standing position and walked out of frame. *Id.*

## II. LEGAL STANDARDS

### A. Motion for Summary Judgment

To survive a motion for summary judgment under Federal Rule of Civil Procedure 56(a), the evidence submitted by the parties must establish that a genuine issue of material fact exists and the moving party is not entitled to judgment as a matter of law. "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its

motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant meets this burden, the nonmovant is required to point the court to record evidence of facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–52 (1986). A fact is "material" if under the substantive law it is essential to the proper disposition of the claim. *Id.* at 248. "An issue is 'genuine' if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998).

The nonmoving party cannot rely upon conclusory allegations or contentions of counsel to defeat summary judgment. *See Pueblo Neighborhood Health Ctrs., Inc. v. Losavio*, 847 F.2d 642, 649 (10th Cir. 1988). Rather, the nonmovant must "go beyond the pleadings and designate specific facts so as to make a showing sufficient to establish the existence of an element essential to [his] case in order to survive summary judgment." *Johnson v. Mullin*, 422 F.3d 1184, 1187 (10th Cir. 2005) (quoting *McKnight v. Kimberly Clark Corp.*, 149 F.3d 1125, 1128 (10th Cir. 1998)).

It is not the court's role to weigh the evidence or assess the credibility of witnesses in ruling on a motion for summary judgment. *See Daniels v. United Parcel Serv., Inc.*, 701 F.3d 620, 627 (10th Cir. 2012), *abrogated on other grounds by Muldrow v. City of St. Louis*, 601 U.S. 346, 355 (2024). Rather, the court resolves all doubts against the movant, construes all admissible evidence in the light most favorable to the nonmovant, and draws all reasonable inferences in favor of the nonmovant. *See Hunt v. Cromartie*, 526 U.S. 541, 551–52 (1999); *see also Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005). However, summary

judgment may nevertheless be granted where "the evidence is merely colorable, or is not significantly probative[.]" *Liberty Lobby*, 477 U.S. at 249–50 (internal citations omitted).

**B. Qualified Immunity**

Defendants, like in their Partial Motion to Dismiss, ECF No. 72, assert a qualified immunity defense. "Qualified immunity protects governmental officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Perry v. Durborow*, 892 F.3d 1116, 1120 (10th Cir. 2018) (quoting *Weise v. Casper*, 593 F.3d 1163, 1166 (10th Cir. 2010) (internal quotation marks omitted)).

"A § 1983 defendant's assertion of qualified immunity is an 'affirmative defense [that] creates a presumption that the defendant is immune from suit.'" *Truman v. Orem City*, 1 F.4th 1227, 1235 (2021) (quoting *Est. of Smart by Smart v. City of Wichita*, 951 F.3d 1161, 1168 (10th Cir. 2020)). To overcome that presumption, plaintiffs must satisfy a two-prong test, demonstrating that: "(1) the defendant's actions violated a constitutional or statutory right, and (2) that right was clearly established at the time of the defendant's complained-of conduct." *Id.* (quoting *Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014)). "If 'the plaintiff fails to satisfy *either part* of this two-part inquiry, the court must grant the defendant qualified immunity.'" *Hesse v. Town of Jackson, Wyo.*, 541 F.3d 1240, 1244 (10th Cir. 2008) (emphasis added) (quoting *Smith v. Cochran*, 339 F.3d 1205, 1211 (10th Cir. 2003)).

As to the first prong of the test, the Tenth Circuit has "stressed the need for careful attention to particulars, especially in lawsuits involving multiple defendants. '[I]t is particularly important' that plaintiffs 'make clear exactly *who* is alleged to have done *what* to *whom*, . . . as

distinguished from collective allegations.'" *Pahls v. Thomas*, 718 F.3d 1210, 1225 (10th Cir. 2013) (quoting *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1215 (10th Cir. 2011)).

As to the second prong of the analysis, "[a] right is clearly established 'when a Supreme Court or Tenth Circuit decision is on point, or if the clearly established weight of authority from other courts shows that the right must be as the plaintiff maintains.'"[8] *Truman*, 1 F.4th at 1235 (quoting *Thomas*, 765 F.3d at 1194). A "precedent is considered on point if it involves '*materially similar conduct*' or applies '*with obvious clarity*' to the conduct at issue." *Lowe v. Raemisch*, 864 F.3d 1205, 1208 (10th Cir. 2017) (quoting *Est. of Reat v. Rodriguez*, 824 F.3d 960, 964–65 (10th Cir. 2016)).

Put another way, "[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful under the circumstances presented." *Herrera v. City of Albuquerque*, 589 F.3d 1064, 1070 (10th Cir. 2009) (quoting *Fogarty v. Gallegos*, 523 F.3d 1147, 1155 (10th Cir. 2008)). And the test for clarity requires that "existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011).

Complete factual symmetry is not an absolute prerequisite for determining whether a violation is clearly established: "a prior case need not be exactly parallel to the conduct [at issue] for the officials to have been on notice of clearly established law." *Truman*, 1 F.4th at 1235. (quoting *Reavis v. Frost*, 967 F.3d 978, 992 (10th Cir. 2020)). "There can also be 'the rare

[8] As in previous orders, the Court notes its concern that this element of the qualified immunity analysis affords greater civil rights protections to individuals in more populous circuits, like those which encompass the West and East Coasts. Compared to the other Federal Circuits, the Tenth Circuit has one of the smallest populations and one of the lowest civil caseloads. *See Federal Judicial Caseload Statistics 2025 Tables*, *Table C—U.S. District Courts-Civil Statistical Tables For The Federal Judiciary*, U.S. Courts (June 30, 2026), https://www.uscourts.gov/data-news/data-tables/2026/06/30/statistical-tables-federal-judiciary/c [https://perma.cc/NLE2-3AB8]. Because there are fewer published opinions regarding Section 1983 in more rural circuits—such as the Tenth Circuit—individuals residing within those circuits have fewer clearly established civil rights than those in more populated circuits.

obvious case, where the unlawfulness of the officer's conduct is sufficiently clear even though existing precedent does not address similar circumstances.'" *Id.* at 1235–36 (quoting *District of Columbia v. Wesby*, 583 U.S. 48, 64 (2018)). The Supreme Court has emphasized, however, that "courts must not define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced." *Wesby*, 583 U.S. at 63–64 (internal quotation omitted).

Both the Supreme Court and the Tenth Circuit have advised courts to avoid addressing the first question—whether a given action should be characterized as a constitutional violation—in instances where the right alleged is not clearly established and claims thus fail on the second prong of the analysis. *See Kerns v. Bader*, 663 F.3d 1173, 1180–81 (10th Cir. 2011) ("[T]he doctrine of 'constitutional avoidance' suggests the wisdom of passing on the first constitutional question [when] 'it is plain that a constitutional right is not clearly established but far from obvious whether in fact there is such a right.'") (quoting *Pearson v. Callahan*, 555 U.S. 223, 237 (2009)).

Finally, plaintiffs seeking to overcome qualified immunity must allege that defendants acted with the state of mind required to establish culpability for each alleged constitutional violation. *See Brown v. Montoya*, 662 F.3d 1152, 1170 (10th Cir. 2011). In addition to knowledge and intent, allegations of deliberate indifference are sufficient in the context of Eighth Amendment violations. *See Burke v. Regalado*, 935 F.3d 960, 991 (10th Cir. 2019). "The Supreme Court has explained that 'deliberate indifference entails something more than mere negligence.'" *Paugh v. Uintah County*, 47 F.4th 1139, 1154 (10th Cir. 2022) (quoting *Farmer v. Brennan*, 511 U.S. 825, 835 (1994)). Rather, "it is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.*

(quoting *Farmer*, 511 U.S. at 835). "Thus, the Court has equated deliberate indifference to 'recklessness,' in which 'a person disregards a risk of harm of which he is aware.'" *Id.* (internal quotations omitted).

## III. DISCUSSION

Both Defendant Sanchez, Mot. at 25–26, and Defendant Acosta, Mot. at 26–30, have claimed qualified immunity. Accordingly, the burden shifted to Plaintiff to meet both prongs of the two-part qualified immunity test. *Est. of Smart by Smart*, 951 F.3d at 1168.

Plaintiff wholly failed to satisfy his burden of establishing that Defendants' alleged conduct violated a clearly established right. To begin with, Plaintiff's Response mentions qualified immunity only once—in the Request for Relief Section on page 32. This is significant because on July 22, 2026, the Court entered an Order explicitly limiting Plaintiff's Response to 31 pages.[9] ECF No. 296. Thus, the only mention of qualified immunity in Plaintiff's Response occurs on a page prohibited by Court order.

Regardless, the Response cites no legal authority (even on prohibited pages) that allegedly clearly establishes the right asserted. Because the Court must first evaluate whether the constitutional right allegedly violated is clearly established under existing authority, *Kerns*, 663 F.3d at 1180–81, it is dispositive that Plaintiff has cited no such authority.[10] *See Doe v. Woodard*, 912 F.3d 1278, 1288, 1302 (10th Cir. 2019) (affirming dismissal of Fourth and Fourteenth Amendment claims with prejudice in the absence of any case law clearly establishing

[9] The July 22 Order granted Plaintiff's third of five motions to extend the Response deadline. *See* ECF Nos. 291, 293, 295, 297, 300.

[10] In fact, this is not the first time Plaintiff has failed to satisfy his burden after Defendants asserted qualified immunity in this case. The Court granted Defendants' Partial Motion to Dismiss on this same basis after Plaintiff failed to provide the Court with legal authority clearly establishing the constitutional rights allegedly violated. ECF No. 79 at 12 ("Plaintiff merely recites the facts as alleged against [the Defendant] and cites no case law that suffices to demonstrate liability in the present instance. This is insufficient for Plaintiff to overcome his burden.").

the rights asserted by the plaintiffs); *cf. Springer v. Seventh Jud. Dist. Ct.*, 716 F. Supp. 3d 1139, 1158 (D.N.M. 2024) ("Plaintiff's failure to cite authority supporting his position 'suggests either that there is no authority to sustain [his] position or that it expects the court to do [his] research.' The Court declines the invitation." (quoting *Rapid Transit Lines, Inc. v. Wichita Devs., Inc.*, 435 F.2d 850, 852 (10th Cir. 1970))). It is a "well-settled rule that '[t]he *plaintiff* bears the burden of citing to [the Court] what he thinks constitutes clearly established law.'" *Quinn v. Young*, 780 F.3d 998, 1013 (10th Cir. 2015) (citing *Thomas v. Durastanti*, 607 F.3d 655, 669 (10th Cir. 2010)). The Court simply cannot engage in an analysis of the second prong of the qualified immunity test without Plaintiff citing any authority that could have put Defendants on notice that their alleged actions violated Plaintiff's clearly established constitutional rights.[11]

Because Plaintiff has not cited "any Supreme Court or Tenth Circuit decision (published or otherwise) that would indicate that [the right asserted] was clearly established[,]" the Court finds that Plaintiff "has not properly laid the groundwork to defeat [Defendants'] assertion of qualified immunity." *Cox v. Glanz*, 800 F.3d 1231, 1247 (10th Cir. 2015).

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment, ECF No. 269, is **GRANTED** and this case is now **CLOSED**.

Margaret Strickland

**MARGARET STRICKLAND**
UNITED STATES DISTRICT JUDGE

[11] Although they have passed the burden to Plaintiff, Defendants have put forward a slew of authority indicating that the alleged actions by Defendants *did not* violate Plaintiff's clearly established rights, even considering the facts as the Court analyzes them at the summary judgment stage. *See* Reply at 11–12 (citing cases).